IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOSHUA DAVID GIDDINGS,<br><br>                    Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD, ATTORNEY<br>GENERAL OF THE STATE OF<br>MONTANA,<br><br>                    Respondents. | CV 16–26–H–DLC–JTJ<br><br><br><br>ORDER |

Before the Court is United States Magistrate Judge John T. Johnston's
findings and recommendation regarding Petitioner Joshua David Giddings' petition
for writ of habeas corpus brought under 28 U.S.C. § 2254.  (Doc. 30.)  Judge
Johnston recommends that Mr. Giddings' petition (Doc. 1) be denied without a
certificate of appealability.  (*Id.* at 75.)  For the reasons stated herein, the Court
agrees and will adopt the recommendations in full.

## BACKGROUND

Amy Rolfe was murdered on July 22, 2005 in Lewis and Clark County,
Montana.  The State of Montana subsequently charged Mr. Giddings with various
offenses stemming from her death, including deliberate homicide, tampering with
evidence, solicitation, and criminal possession of dangerous drugs.  (Doc. 19-5.)

The case proceeded to trial with Mr. Giddings represented by Randi Hood, Al Avignone, and Lisa Banick. (Doc. 19-24 at 2.) The jury convicted Mr. Giddings on all charges except solicitation. (*Id.*)

The state district court sentenced Mr. Giddings to life without the possibility of parole on the deliberate homicide charge and 50 years each on the possession and tampering charges, to run consecutively. (*Id.* at 3–4.) Of note, in sentencing Mr. Giddings on the latter two charges, the state district court concluded that he met the definition of a persistent felony offender under Montana law. (*Id.*) Mr. Giddings litigated a direct appeal to the Montana Supreme Court complaining of various errors. During this proceeding, he was represented by Joslyn Hunt. The Montana Supreme Court rejected his contentions and affirmed his convictions through a published opinion issued on March 3, 2009. *State v. Giddings*, 208 P.3d 363 (Mont. 2009).

Mr. Giddings subsequently initiated post-conviction relief proceedings in Montana state court. (*See generally* Doc. 25-1.) For at least part of these proceedings, Mr. Giddings was represented by Chad Wright. (Doc. 29 at 2–3.) The state district court denied the petition on January 9, 2015. (Doc. 25-18.) Mr. Giddings appealed and was again represented by Chad Wright for at least part of the proceedings. (Docs. 25-19; 25-21.) While this appeal was pending, Mr. Giddings initiated the instant habeas proceedings in this Court. (Doc. 1.) The

Court stayed such proceedings until Mr. Giddings' state court remedies were exhausted.  (Docs. 8; 12.)

The Montana Supreme Court affirmed denial of his petition for postconviction relief on June 7, 2016.  *Giddings v. State*, 2016 WL 3173127 (Mont. 2016) (unpublished).  The stay was then lifted (Doc. 15) and the State of Montana was ordered to file various documents from the state court record to permit this Court to complete the prescreening process required by 28 U.S.C. § 1915A and Rule 4 of the Rules Governing Section 2254 Cases and Section 2255 Proceedings (Doc. 16).  The State of Montana filed such documents (Docs. 19–20; 22; 25; 28) and on October 21, 2020, Judge Johnston issued his Findings and Recommendation, recommending that Mr. Giddings' petition be denied, without a certificate of appealability.  (Doc. 30.)

Specifically, Judge Johnston enumerated Mr. Giddings' 15 claims (*id.* at 24–25) and recommended that they be rejected as non-cognizable (*id.* at 26–34), procedurally defaulted (*id.* at 35–37), or barred by AEDPA (*id.* at 37–74).  Mr. Giddings was given several extensions to file his objections to Judge Johnston's conclusions (Docs. 32; 34; 36; 38; 40) and did so on August 5, 2021 (Doc. 41).  In his objections, Mr. Giddings also moves the Court for leave to file an amended petition.  (*Id.* at 1.)  The matter is now ripe for review.

## STANDARD OF REVIEW

The level of scrutiny applied by this Court to a magistrate's findings and recommendations varies depending on whether a party exercises its right to object. *Thomas v. Arn*, 474 U.S. 140, 150–51 (1985). If a party objects to aspects of a magistrate's proposed findings and recommendations, then this Court must review the objected-to portions *de novo*. 28 U.S.C. § 636(b) (1)(C). Absent objections, however, this Court is free to review the unobjected to portion of a magistrate's proposed findings and recommendations "under a *de novo* or any other standard." *Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017) (quoting *Thomas*, 474 U.S. at 154).

This Court's general practice is to review unobjected to portions of a magistrate's proposed findings and recommendations for clear error. *See, e.g., Demarie v. Guyer*, 2021 WL 171043 (D. Mont. 2021); *Wallway v. Schneider*, 2019 WL 95657 (D. Mont. 2019). Clear error review is "significantly deferential" and exists when the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). With this framework in mind, the Court will turn to the substance of Judge Johnston's conclusions.

## ANALYSIS

As noted above, Mr. Giddings' petition advances 15 claims.  (Doc. 30 at 24–25.)  Mr. Giddings' objections do not take issue with this construction and the Court reads his petition to contain the same constitutional claims identified by Judge Johnston.  This includes claims asserting that:

(1)     Attorney Chad Wright was constitutionally ineffective during post-conviction relief proceedings, in violation of the Sixth Amendment;

(2)     Attorney Chad Wright's representation of Mr. Giddings in post-conviction relief proceedings presented a conflict of interest, in violation of the Sixth and Fourteenth Amendments;

(3)     Mr. Giddings exclusion from a August 25, 2006 state district court hearing violated the Fifth, Sixth, and Fourteenth Amendments;

(4)     Mr. Giddings exclusion from a November 29, 2006 state district court hearing violated the Fifth, Sixth, and Fourteenth Amendments;

(5)     Mr. Giddings exclusion from a December 8, 2006 state district court hearing violated the Fifth, Sixth, and Fourteenth Amendments;

(6)     Mr. Giddings exclusion from a January 2, 2007 state district court hearing violated the Fifth, Sixth, and Fourteenth Amendments;

(7)     the State of Montana destroyed exculpatory evidence in violation of the Fifth, Sixth, and Fourteenth Amendments;

(8)     the state district court allowed the jury to take a videotape into deliberations in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments;

(9)     the State of Montana's discovery abuses violated the Fifth, Sixth, and Fourteenth Amendments;

(10)   the state district court's endorsement of 2 jailhouse violated the Fifth, Sixth, and Fourteenth Amendments;

(11)   the state district court's limitation on the defense's cross-examination of Richard Allen King violated the Fifth, Sixth, Eighth, and Fourteenth Amendments;

(12)   the State of Montana's intentional solicitation of testimony in violation of a state district court order violated the Fifth, Sixth, and Fourteenth Amendments;

(13)   the State of Montana's tampered with or fabricated evidence in violation of the Fifth, Sixth, and Fourteenth Amendment;

(14)   cumulative error occurred; and

(15)   his sentence is illegal.

(*See generally* Doc. 1; *see also* Doc. 30 at 24–25.)

Judge Johnston concluded that claims 1–2, and 15 were not cognizable in habeas proceedings (Doc. 30 at 26–34), that claim 13 was procedurally defaulted (*id.* at 35–37), and that claims 3–12, and 14 are barred by AEDPA (*id.* at 37–74).

6

In Mr. Giddings' objections, he takes issue with Judge Johnston's conclusions as to claims 1–2 (Doc. 41 at 1–24), claims 7 and 9 (*id.* at 24–50), claim 11 (*id.* at 50–60), claim 10 (*id.* at 60–77), claim 15 (*id.* at 77–96), and claim 14 (*id.* at 96–106). Reviewing the unobjected to claims for clear error, (claims 3–6, 8, 12–14), the Court finds none.  These conclusions are thorough, well-reasoned, and will be adopted in full.  As such, the Court will turn its attention to the objected to conclusions.

### I.      Claims Regarding Post-Conviction Relief Counsel (Claims 1–2).

As noted above, Mr. Giddings' petition levels two claims against Chad Wright, the attorney who represented him through at least part of his postconviction relief proceedings.  (Doc. 1 at 4–18.)  The first claim (Claim 1) alleges that Mr. Wright was constitutionally ineffective in failing to amend Mr. Giddings' postconviction relief petition to include a claim of ineffective assistance of counsel against trial counsel Randi Hood on the basis that "she failed to ensure his presence" at 4 pre-trial hearings.  (Doc. 1 at 4–17.)  The second claim (Claim 2) alleges that Mr. Wright's representation of Mr. Giddings in the appellate stage of his postconviction relief proceedings presented a conflict of interest, thus violating his Sixth and Fourteenth Amendment rights.  (*Id.* at 17–18.)  The Court agrees with Judge Johnston that neither of these claims can proceed.

Judge Johnston found these claims failed for a variety of reasons.  First,

Judge Johnston indicated in a previous order that both of these claims were procedurally defaulted, likely precluding this Court's review of such claims through the habeas process.  (Docs. 26 at 6–9; 30 at 28.)  Second, Judge Johnston held that even if such claims were not procedurally defaulted, they are not "cognizable in federal habeas."  (Doc. 30 at 26–27.)   Finally, Judge Johnston held that to the extent Claim 1 could be read to fall within the procedural default exception established by *Martinez v. Ryan*, 566 U.S. 1 (2012), the exception was not available because Mr. Giddings had failed to present a substantial claim of ineffective assistance of trial counsel.  (*Id*. at 27–32.)[1]

In his objections, Mr. Giddings largely argues the merits of his underlying claims as opposed to demonstrating why Judge Johnston's procedural-based rulings are incorrect.  (Doc. 41 at 1–24.)  For example, Mr. Giddings reiterates the factual background surrounding Mr. Wright's representation in the postconviction relief proceedings (*e.g., id.* at 8–11), outlines the postconviction relief proceedings before the state district court related to his claim against Ms. Hood (*id.* at 10–13), and repeats his arguments regarding Mr. Wright's conflict of interest (*id.* at 14–24.)  The Court will construe these statements as objections to Judge Johnston's conclusions—although they do not take issue directly with his conclusions—and

---

[1] Of note, Judge Johnston specifically discussed *Martinez*'s possible application in a prior order (Doc. 26 at 10–15) and gave Mr. Giddings the opportunity to brief its application, which he did through a filing on May 6, 2019 (Doc. 29).

review the matter *de novo*.

The Court starts with some overarching habeas principles. Federal law authorizes a state prisoner to seek habeas relief "on the ground that he is in custody in violation of" federal law. 28 U.S.C. § 2254(a). Put another way, "if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). But "the basic structure of federal habeas jurisdiction" confirms that "state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is why habeas relief will generally not arise from claims that "a habeas petitioner" has not "first attempt[ed] to present . . . in state court." *Id.* (citing 28 U.S.C. § 2254(b)).

The Court starts its analysis largely where Judge Johnston did, by concluding that Claims 1 and 2 are not cognizable because they fail to allege the deprivation of a constitutional right. While Mr. Giddings certainly enjoyed the right to the effective assistance of counsel during trial, this right did not extend to postconviction relief proceedings. *Garza v. Idaho*, ___ U.S. ___, ___, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings"). As such, standing alone, Mr. Giddings cannot obtain habeas relief on the basis that

Mr. Wright failed to provide effective assistance. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); 28 U.S.C. § 2254(i) (stating "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Thus, to the extent Mr. Giddings argues that he is entitled to habeas relief solely because Chad Wright was ineffective in representing him in postconviction relief proceedings (which forms the basis of most of Claim 1 and all of Claim 2), no constitutional deprivation has occurred, and consequently, no habeas relief can issue.

But the Court agrees with Judge Johnston that the analysis cannot end there because a liberal construction of Mr. Giddings' petition supports the conclusion that at least a portion of Claim 1 contends that Chad Wright's ostensible ineffectiveness in failing to bring an ineffective assistance claim against Randi Hood, should serve as justification for this Court reviewing the claim against Ms. Hood on the merits. In other words, Mr. Giddings' petition can be construed to argue that although an ineffective assistance of counsel claim against Ms. Hood for failing to ensure his presence at several pre-trial hearings is procedurally defaulted, this Court should nonetheless review it because the procedural default was the result of Mr. Wright's own ineffectiveness during the postconviction relief stage. This is where the rule from *Martinez* comes into play.

10

Recall that a claim cannot generally be advanced through the habeas process unless it was first presented in state court.  28 U.S.C. § 2254(b).  But the rule can be more complicated.  Relevant here, if a claim is presented to a state court, but the state court finds that the claim is procedurally defaulted (i.e. that the state court denied the claim "based on an adequate and independent state procedural rule"), then the federal habeas court is generally without the power to review it.  *Davila v. Davis*, ___ U.S. ___, ___, 137 S. Ct. 2058, 2064 (2017).  This rule of "procedural default" is "an important 'corollary' to the exhaustion requirement."  *Id.*  Without a doubt, Mr. Giddings claim that Ms. Hood was constitutionally ineffective for failing to secure his presence at several pretrial hearings is procedurally defaulted.

This is because, in adjudicating Mr. Giddings' postconviction relief petition, the state district court concluded that although he had raised a "possible claim that Hood did something wrong regarding his attendance at the pretrial hearings," he never placed that claim in an amended petition despite being specifically afforded leave to do so.  (Doc. 25-18 at 17.)  As such, the state district court found the claim was not properly before it, citing to Montana Code Annotated § 46-21-105.[2]  (*Id.*)  In other words, Mr. Giddings' ineffective assistance claim against Ms. Hood is procedurally defaulted because the state district court rejected it on the basis that it

---

[2] This statute provides that any ground for relief advanced in postconviction relief proceedings "must be raised in the original or amended original petition."  Mont. Code Ann. § 46-21-105(1)(a) (2015).

was not raised "at the time or in the place that state law requires." *Trevino*, 569 U.S. at 421. The question then becomes whether there exists cause to excuse this default.[3]

The procedural default rule is not without exceptions and a "state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Id.* Although attorney error in postconviction relief proceedings, like that alleged here, will generally not suffice to provide cause to excuse a procedural default, *Coleman v. Thompson*, 501 U.S. 722, 757 (1991), the Supreme Court in *Martinez* provided a "narrow, equitable qualification," to this general rule. *Davila*, 137 S. Ct. at 2065.

In *Martinez*, the Supreme Court held that "where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal . . . 'a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistant at trial if' the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Id.* In other words, when a habeas

---

[3] The state district court's decision to nonetheless address the merits of Mr. Giddings' ineffective assistance of trial counsel claim (Doc. 25-18 at 17–20) does not alter this conclusion. *Zapata v. Vasquez*, 788 F.3d 1106, 1111–12 (9th Cir. 2015) (holding that a claim is procedurally defaulted when a state district court invokes the applicable procedural rule, even if it elects to nonetheless address the merits of the claim).

petitioner presents a procedurally defaulted claim that their trial counsel was constitutionally ineffective, *Martinez* provides a mechanism by which a federal habeas court can reach the claim on the merits, despite the procedural default.

But application of *Martinez*, faithful to its predecessor case *Coleman*, requires a showing of both "cause" and "prejudice." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019), *cert. granted on other grounds*, *Shinn v. Ramirez*, ___ U.S. ___, 141 S.Ct. 2620 (2021); *see also Apelt v. Ryan*, 878 F.3d 800, 825 (9th Cir. 2017) ("*Martinez* is properly understood as building on *Coleman*"). "Cause" for *Martinez* purposes, requires Mr. Giddings to "show that post-conviction counsel was ineffective under the standards of" *Strickland v. Washington*, 466 U.S. 668 (1984). *Dickinson v. Shinn*, 2 F.4th 851, 858 (9th Cir. 2021). This means Mr. Giddings must demonstrate that "(a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Ryan*, 937 F.3d at 1241. "Prejudice" for *Martinez* purposes requires Mr. Giddings to show "that the underlying ineffective-assistance-of-trial-counsel claim is substantial a substantial one, which is to say" the "claim has some merit." *Dickinson*, 2 F.4th at 858.

These "cause" and "prejudice" analyses "necessarily overlap, since each considers the strength and validity of the underlying ineffective [trial] assistance

claim." *Ryan*, 937 F.3d at 1241 (also adding that "[d]etermining whether there was a reasonable probability that the result of the post-conviction proceedings would be different," for purposes of the "cause" analysis, "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective").  But they do "remain distinct," and just because there is "prejudice" does not mean there will always be "cause," or vice versa.  *Id.* at 1241–42.

Putting it all together, "to establish cause and prejudice in order to excuse the procedural default of his ineffective assistance of trial counsel claim, a petitioner must demonstrate: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different; and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Dickinson*, 2 F.4th at 858.  Given the overlap between "cause" and "prejudice" noted above, prior Ninth Circuit cases find it most analytically clear to begin with the third inquiry—whether the petitioner has presented a substantial claim that trial counsel was constitutionally ineffective.  *Id.; Ryan*, 937 F.3d at 1242.  This approach makes sense.

This is because the crux of any *Martinez*-dependent claim is that a procedurally defaulted ineffective assistance of trial counsel claim should nonetheless be reviewed on the merits by a federal habeas court because the

14

prisoner's postconviction relief counsel was ineffective in bringing about the default.  That is, the prisoner's postconviction relief counsel was ineffective in not saying that trial counsel was ineffective (cause) and that adversely impacted the prisoner because the trial counsel ineffective assistance claim is a viable one (prejudice).  When viewed in this way, a party cannot possibly establish cause, for *Martinez* purposes, unless they first establish prejudice.  If trial counsel was not ineffective, then postconviction counsel cannot possibly have been ineffective for failing to present a claim arguing that they were.  *Dickinson*, 2 F.4th at 858 ("postconviction counsel would not be ineffective for failure to raise an ineffective assistance" claim directed at "counsel who was not constitutionally ineffective") (internal alternations and citations omitted).  As such, the Court's *Martinez* analysis begins (and ultimately ends) with the third inquiry listed above, asking whether Mr. Giddings' ineffective assistance claim against Ms. Hood is substantial.

In order to present a "substantial" claim that trial counsel was constitutionally ineffective, the claim must at least have "some merit" and not be "wholly without factual support."  *Ryan*, 937 F.3d at 1241.  This standard has not been further defined by the Supreme Court but is akin to the standard surrounding certificates of appealability, which defines a substantial claim as one "that reasonable jurists could debate" the proper resolution of or is at least "adequate

[enough] to deserve encouragement." *Id.* One thing is clear, the Court's task is not to "conduct[] a full merits review" of the claim. *Id.* at 1242. Applying these principles, the Court finds that Mr. Giddings' ineffective assistance claim against Ms. Hood is insubstantial and he consequently cannot avail himself to *Martinez*'s procedural default exception.

To present a substantial *Strickland* claim, Mr. Giddings must viably establish that: (1) Ms. Hood performed deficiently; and (2) the deficiency prejudiced him. *Ryan*, 937 F.3d at 1243. The Court can skip straight to the prejudice prong, assuming arguendo Ms. Hood performance was deficient and instead asking whether Mr. Giddings has a substantial claim that "he was prejudiced within the meaning of *Strickland*" by her deficient performance. *Dickinson*, 2 F.4th at 858. Under *Strickland*, "to establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1245. Mr. Giddings has failed to present a substantial *Strickland* claim.

Mr. Giddings' claim against Ms. Hood contends that she was constitutionally ineffective by failing to ensure his presence at four pre-trial hearings he had a constitutional right to attend. (Doc. 1 at 4–16.)[4] As alleged in

---

[4] As noted above, Mr. Giddings' petition brings independent claims directly seeking habeas relief on the basis of his absence from these same hearings. (Doc. 1 at 18–22.) Judge Johnston

16

Mr. Giddings' petition these four hearings include: (1) a August 25, 2006 "in-chambers hearing" regarding Ms. Hood's "take over of [Montana's] brand new public defender system, as Chief Public Defender" (*id.* at 4, 19); (2) a November 29, 2006 "pre-trial evidentiary hearing," that also revolved around Ms. Hood's service with Montana's public defender system (*id.* at 5, 19); (3) a December 8, 2006 "pre-trial evidentiary hearing, in which evidence was presented," regarding Mr. Giddings' first motion to dismiss, arguing the state had committed discovery abuses (*id.* at 21–22; Doc. 30 at 5); and (4) a January 2, 2007 hearing on the same issue (Doc. 1 at 6, 22–24).

Mr. Giddings argues if he had been permitted to attend the August and November hearings, he could have observed Ms. Hood's demeanor, personally assessed her effectiveness, and learned facts that would have permitted Mr. Giddings to figure out that Ms. Hood was simply too busy running the state public defender system to effectively represent him in the state court proceeding.  (Doc. 1 at 18–20).  Mr. Giddings also adds that at this hearing he would have been able to advise his counsel about "exculpatory evidence being withheld by the government."  (*Id.* at 20.)[5]  The problem is none of this substantially establishes

_____

concluded these claims were either procedurally defaulted or barred by AEDPA, (Doc. 30 at 40–47) and Mr. Giddings' objections do not take issue with these conclusions.

[5] Mr. Giddings' objections do not appear to include new argument regarding what would have been different if he had been able to attend the December or January hearings.  In any event, the Court's analysis as to the August and November hearings applies with equal force to the other hearings.

that there is a reasonable probability, had he been present, Mr. Giddings would not have been convicted.

Mr. Giddings was represented at trial by three experienced attorneys. Mr. Giddings has not alleged that he was unable to confer with counsel throughout the state district court proceedings, which would include both before and after the hearings at issue. Mr. Giddings does not allege, nor has he appeared to ever allege, that he was unable to confer with Ms. Hood, or his two other attorneys about either Ms. Hood's takeover of the state public defender system or information he had regarding the state's suppression or destruction of exculpatory evidence. It also telling Mr. Giddings does not allege Ms. Hood was ineffective in any other way than failing to ensure he was present at the hearings at issue. Indeed, Mr. Giddings even told the state district court he did not think she was ineffective at all. (Doc. 25-13 at 5.) In short, Mr. Giddings has not presented a substantial claim that he was prejudiced by Ms. Hood's failure to secure his presence at the hearings (i.e. that there is a reasonable probability he would not have been convicted at trial).

Because Mr. Giddings has not presented a substantial claim that he was prejudiced by Ms. Hood's allegedly deficient performance in failing to secure his presence at four pretrial hearings, he cannot establish an essential element of his ineffective of assistance of trial counsel claim. Because he cannot establish a substantial ineffective assistance of counsel claim against trial counsel he cannot

establish a substantial ineffective assistance of counsel claim against postconviction relief counsel. This prevents the Court from reviewing this procedurally defaulted claim on the merit by way of *Martinez*. The Court will adopt Judge Johnston's rulings on Mr. Giddings' postconviction counsel claims in full.

## II.     Claims Regarding Destruction of Evidence (Claims 7 and 9).

In Mr. Giddings' petition, he seeks relief based on the state's ostensible destruction and withholding of exculpatory evidence in violation of his constitutional rights. (Doc. 1 at 24–26, 28–29.) Mr. Giddings complains that investigating officers destroyed interview notes, suppressed witnesses, and otherwise failed to adequately investigate the case. (*Id.*) Mr. Giddings recognizes these destruction of evidence claims were rejected by the Montana Supreme Court, but argues such claims should nonetheless be reviewed anew by this Court. (*Id.*) Judge Johnston concluded that deference to the state court decision was required by AEDPA and recommends that both claims be denied. (Doc. 30 at 47–54.) The Court agrees AEDPA deference is appropriate.

AEDPA "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court." *Shinn v. Kayer*, ___ U.S. ___, ___, 141 S.Ct. 517, 520 (2020). The AEDPA provision critical to this case is § 2254(d), which "bars relitigation of any claim 'adjudicated

on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and

(2)." *Richter*, 562 U.S. at 98 (2011).  These two exceptions apply when the state

court's decision: (1) "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States;" or (2) "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Although §2254(d) is split into two subsections, it actually pronounces three

exceptions, because AEDPA's "'contrary to' and 'unreasonable application'

clauses have independent meaning."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The

"contrary to" clause (exception 1) applies "if the state court applies a rule different

from the governing law set forth in [the Supreme Court's] cases, or if it decides a

case differently than [the Supreme Court has] done on a set of materially

indistinguishable facts."  *Id.*  The "unreasonable application" clause (exception 2)

applies "if the state court correctly identifies the governing legal principle from

[the Supreme Court's] decisions but unreasonably applies it to the facts of the

particular case."  *Id.*  This misapplication must be "objectively unreasonable," as

opposed to just incorrect.  *Id.*  The legal focus is on "the holdings, but not the dicta,

of the Supreme Court at the time the state court adjudicated the claim on the

merits."  *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014).  The factual focus is

20

"limited to the record before the state court that adjudicated the claim on the merits." *Id.* at 777–78.

The "unreasonable determination" subsection (exception 3), applies when a petitioner challenges "purely factual questions resolved by the state court," and requires this Court to ask "whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). This clause applies "most readily to situations where petitioner challenges the state court's findings based entirely on the state record," including where "the finding is unsupported by sufficient evidence . . . the process employed by the state court is defective . . . or [where] no finding as made by the state court at all." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schiro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). In order to prevail on any of these arguments, however, it must be established that "any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Jones v. Ryan*, 1 F.4th 1179, 1193 (9th Cir. 2021) (quoting *Taylor*, 366 F.3d at 1000).

These are "highly deferential standard[s] for evaluating state-court rulings." *Demetrulias v. Davis*, ___ F.4th ___, ___, 2021 WL 4314635, *5 (9th Cir. 2021). Indeed, under AEDPA, "habeas corpus is a guard only 'against extreme

malfunctions in the state criminal justice systems.'" *Jurado v. Davis*, 12 F.4th 1084, 1091 (9th Cir. 2021).  If these standards found in § 2254(d) are "difficult to meet, that is because [they were] meant to be." *Richter*, 562 U.S. at 786. Applying them, the Court agrees with Judge Johnston there is no basis for habeas relief as to Claims 7 or 9.

As to Claims 7 and 9, the Court agrees with Judge Johnston that the Montana Supreme Court's adjudication of this issue did not constitute an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963) or otherwise present an unreasonable determination of facts.  In his objections, Mr. Giddings provides nothing new, except adding that he now possesses "information [that only] became available recently, while" his petition "was in pre-screening."  (Doc. 41 at 25–26.)  This evidence apparently consists of witness testimony establishing that "government agents have threatened defense witnesses, to dissuade them from testifying to anything 'favorable to Giddings,' some of whom alleged to have given Ekola exculpatory information they say he incorporated into handwritten notes he took during witness interviews."  (*Id.* at 29–20, 36.)  No affidavits or declarations from these individuals have been filed.  Because Mr. Giddings fears these witnesses will be subjected to government intimidation, he refers to these witnesses possessing "new" information, only by initial.  (*Id.* at 31–32, 36–50.)

Mr. Giddings seeks an evidentiary hearing to present this ostensibly new witness testimony in support of his destruction of evidence claims.  (*Id.* at 25–26.)

The problem is, however, that because Mr. Giddings' destruction of evidence claims were presented to and rejected by the Montana Supreme Court, AEDPA applies, and AEDPA does not permit this Court to consider new evidence even assuming Mr. Giddings was suddenly able to marshal it into Court.  *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) *on the record that was before that state court*") (emphasis added); *Stokley v. Ryan*, 659 F.3d 802, 809 (9th Cir. 2011) (holding that when AEDPA applies, *Pinholster* "forecloses the possibility of a federal evidentiary hearing").  This is true, whether, as here, the petitioner seeks habeas relief through reliance on § 2254(d)(1) or (d)(2).  *Pinholster*, 563 U.S. at 185, n.7 (noting that review of a habeas claim under either §2254(d)(1) or (d)(2) "is plainly limited to the state-court record").  As such, resolution of Claims 7 and 9 by this Court cannot rest on evidence not previously presented to the state court.

Besides pointing to allegedly new evidence in the form of witness testimony, which this Court cannot consider, Mr. Giddings provides no other basis for rejecting Judge Johnston's conclusions as to his destruction of evidence claims.  As with Judge Johnston, the Court finds no basis for concluding that the Montana

Supreme Court's resolution of Mr. Giddings' destruction of evidence claims was "so lacking in justification that there was an error beyond any possibility for fair minded disagreement." *Bemore v. Chappell*, 788 F.3d 1151, 1160 (9th Cir. 2015). Accordingly, AEDPA requires that they be denied.

### III.   Claim Regarding Limited Cross Examination of Richard Allen King (Claim 11).

Mr. Giddings' eleventh claim will suffer a similar fate.  There, Mr. Giddings argues that his constitutional rights were violated "when the state district court limited the defenses cross-examination of Richard Allen King" by permitting him to introduce "reverse 404(b) evidence" under the Montana Rules of Evidence. (Doc. 1 at 32–37.)  Mr. Giddings appears to argue that the evidence he sought to introduce through the forbidden cross-examination of Mr. King constitutes proof of his actual innocence.  (*Id.*)  As Mr. Giddings recognizes, this claim was presented to and rejected by the Montana Supreme Court both on direct appeal and in post-conviction relief proceedings.  (Doc. 1 at 36–37); *Giddings*, 208 P.3d at 366–68; *Giddings*, 2016 WL 3173127 at *4–5.

Judge Johnston concluded this claim failed for several reasons.  (Doc. 30 at 65–73.)  First, Judge Johnston concluded that Mr. Giddings' eleventh claim failed to the extent it complained about the state court's alleged misapplication of a Montana rule of evidence, because federal habeas relief cannot stem from "an alleged error in the interpretation or application of state law."  (Doc. 30 at 65.)

24

Second, Judge Johnston concluded that the evidence Mr. Giddings seeks to introduce to prove his actual innocence was considered and rejected by the state courts and fails to establish that the state court ruling affected the verdict.  (*Id.* at 65–68.)  Finally, Judge Johnston concluded that Mr. Giddings had failed to demonstrate the Montana Supreme Court unreasonably denied his actual innocence claim.  (*Id.* at 68–70.)  The Court will affirm these conclusions.

As with Mr. Giddings' destruction of evidence claims, his objections to Judge Johnston's resolution of his eleventh claim assert that he possesses new evidence, in the form of witness testimony, which, if presented at trial, would have established that Mr. King was actually responsible for Any Rolfe's murder.  (Doc. 53 at 50–60.)  The problem here is the same problem noted above.  Not only is this "new information" unverifiable and self-serving, but because the claim advanced here was advanced before the Montana Supreme Court, AEDPA applies.  And AEDPA does not permit this Court to consider evidence outside of the state court record.  *Pinholster*, 563 U.S. at 185, n.7.  With no other objectionable basis being put forward by Mr. Giddings, Judge Johnston's resolution of this claim will be adopted in full.

### IV.   Claim Regarding Endorsement of Jailhouse Informants (Claim 10).

Mr. Giddings' tenth claim is also barred by AEDPA.  This claim alleges that the state trial court's "last minute endorsement of two additional jailhouse

informants" violated his constitutional rights.  (Doc. 1 at 29–32.)  Mr. Giddings

presented this claim to the Montana Supreme Court, but complains its rejection

was the result of an unreasonable determination of facts and was contrary to

established Supreme Court precedent.  (*Id.*)  Judge Johnston rejected this claim,

affording AEDPA deference, and determining that the Montana Supreme Court's

decision was not so unreasonable as to justify habeas relief.  (Doc. 30 at 58–65.)

 In his objections, Mr. Giddings again points to "new" evidence he has

ostensibly only recently been made aware of, which comes in the form of witness

testimony that Gillette, one of the trial witnesses at issue, "not only admitted to

lying on the stand during trial, but that Ekola put a great deal of pressure on

Gillette to testify."  (Doc. 41 at 60– 63.)  Mr. Giddings also maintains that this new

witness will testify that Ekola placed a wire on Gillette to monitor conversations

with Mr. Giddings and asserts that "it is likely Ekola destroyed the wire

surveillance conducted by Gillette," presumably because it revealed information

favorable to Mr. Giddings.  (*Id.*)  Mr. Giddings maintains that had this wire

surveillance been turned over he could have used it to impeach Gillette or that the

state district court would have likely barred Gillette from testifying in the first

place.  (*Id.* at 65.)[6]

---

[6] Mr. Giddings also asserts another "new" witness has information about Gillette's conduct while incarcerated which he could have used to attack Gillette's credibility.  (Doc. 41 at 72–77.)

It should be clear by now, but none of the "new" evidence Mr. Giddings raises for the first time in his objections can be properly considered by the Court at this juncture.  Because Mr. Giddings' claim regarding testimony at trial from jailhouse informants, as alleged in his petition, is precisely the claim he advanced before the Montana Supreme Court, AEDPA applies.  And AEDPA limits this Court's review to the record before the state court, forbidding it from entertaining the evidence presented for the first time in Mr. Giddings' objections.  Setting this "new" evidence aside, Mr. Giddings' objections do not take issue with Judge Johnston's conclusion as to his tenth claim.  As with Judge Johnston, the Court similarly finds nothing unreasonable about the Montana Supreme Court's adjudication of this issue.  *Giddings*, 208 P.3d at 373–74.  This claim will be denied.

## V.    Claim Regarding Legality of Sentence (Claim 15).

Mr. Giddings' fifteenth claim asserts that the state district court's imposition of a life without parole sentence is unconstitutional, because he was not actually eligible for that sentence under Montana law.  (Doc. 1 at 42–44.)  Mr. Giddings also challenges the state court's decision to designate him a persistent felony offender.  (*Id.*)  Mr. Giddings recognizes this issue was presented to and rejected by the Montana Supreme Court.  (*Id.* at 44); *Giddings*, 208 P.3d at 369–70.  Mr. Giddings also successfully contested the excessiveness of his persistent felony

offender sentences in front of the Sentence Review Division of the Montana Supreme Court.  (Doc. 28-4.)

Judge Johnston held that this claim was not cognizable in habeas to the extent it challenged the state district court's application of its own sentencing laws. (Doc. 30 at 32–33.)  Judge Johnston also held that to the extent such a claim may be proper upon a showing of fundamental unfairness, Mr. Giddings had failed to make such a showing.  (*Id.*)  In Mr. Giddings' objections he argues that he was both statutorily ineligible for life without parole and that the imposition of such a sentence otherwise violated the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  (Doc. 41 at 77–96.)  De novo review compels the same conclusion as Judge Johnston.

First, the Court agrees with Judge Johnston that to the extent Mr. Giddings' fifteenth claim argues the state trial court misapplied Montana's sentencing laws, such a claim is not cognizable in federal habeas.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (9th Cir. 1990) ("federal habeas corpus relief does not lie for errors of state law").  Thus, to the extent Mr. Giddings' objections reiterate his position that Montana's sentencing laws were misapplied by the state district court, they will be overruled.

Mr. Gidding's reliance on *Apprendi* fairs no better.  This precise *Apprendi* challenge was presented to and rejected by the Montana Supreme Court.  *Giddings*,

208 P.3d at 369–70.  As discussed at length previously, this means any review of the claim is governed by AEDPA's highly deferential standards.  28 U.S.C. § 2254(d).  The Court finds nothing about the Montana Supreme Court's resolution of this issue to be "contrary to," or an "unreasonable application of" Supreme Court precedent, or otherwise constitute "an unreasonable determination of facts." *Id.*

Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," must be "submitted to a jury, and proved beyond a reasonable doubt."  *United States v. Guerrero-Jasso*, 752 F.3d 1186, 1190 (9th Cir. 2014).  As the Montana Supreme Court in *Giddings*, recognized, the Montana Supreme Court has previously determined that "the statutory maximum punishment for the crime of deliberate homicide when the death penalty is not sought, for the purposes of *Apprendi*, is life imprisonment without the possibility of parole."  208 P.3d at 370 (citing *State v. Garrymore*, 145 P.3d 946 (Mont. 2006) and *State v. Rosling*, 180 P.3d 1102 (Mont. 2008)).

Despite Mr. Giddings repeated protestations to the contrary, the Court finds nothing unreasonable about this decision.  As Mr. Giddings recognizes, the State of Montana did not ultimately seek the death penalty as to his deliberate homicide charge.  (Doc. 41 at 89.)  As such, life without parole was within the range of possible punishments available to the state district court upon Mr. Giddings'

conviction for deliberate homicide.  Mont. Code Ann. § 45-5-102(2); *Rosling*, 180

P.3d at 1116–17.  This claim will be denied.

### VI.    Claim Regarding Cumulative Error (Claim 14).

Mr. Giddings' fourteenth claim seeks relief based on the cumulative error

doctrine, arguing that "a landslide of constitutional error" has occurred.  (Doc. 1 at

39–42.)  Judge Johnston found that since no constitutional error had been found,

the cumulative error doctrine was inapplicable.  (Doc. 30 at 73–74.)  Mr. Giddings

objects to this conclusion, again reiterating what has already been said.  (Doc. 41 at

96–106.)  The Court, having found no constitutional violation, agrees that there is

no basis for affording Mr. Giddings relief under the cumulative error doctrine.

*Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (stating "Because there is

no single constitutional error in this case, there is nothing to accumulate to a level

of a constitutional violation"), *overruled on other grounds by Slack v. McDaniel*,

529 U.S. 473 (2000).  This claim will be denied.

Having reviewed Judge Johnston's findings and recommendation and Mr.

Giddings' objections, the Court finds that Mr. Giddings' petition fails to present a

claim upon which habeas relief could issue from this Court.  Similarly, because

Mr. Giddings' request to amend his petition, as included in his objections, seeks to

present "new" evidence not previously available, the Court will deny it.  Even if

included in the original petition, because the claims to which the "new" evidence

relates were adjudicated on the merits in state court, this Court is without the power to consider it.

As a final matter, the Court finds that Mr. Giddings has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Consequently, it will adopt Judge Johnston's recommendation that a certificate of appealability be denied.  No certificate of appealability shall issue.

Accordingly, IT IS ORDERED that Mr. Giddings' objections (Doc. 41) are OVERRULED.

IT IS FURTHER ORDERED that Mr. Giddings' request to amend his petition (Doc. 41) is DENIED.

IT IS FURTHER ORDERED that Judge Johnston's findings and recommendation (Doc. 30) is ADOPTED in FULL.

IT IS FURTHER ORDERED that Mr. Giddings' petition (Doc. 1) is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk of Court is directed to enter judgment in favor of Respondents by separate document and close the case file.

DATED this 28th day of October, 2021.

Dana L. Christensen, District Judge
United States District Court

31